I deem it unnecessary to examine the grounds of relief founded on the alleged fraudulent representation as to the peculiar advantages of the Eagle Falls as the site for a town, for there are other grounds on which I am satisfied that this contract should be set aside. I mean the fraudulent employment of puffers at the sale. But I cannot forbear from observing that the manner of making these representations has very much the appearance of a fraudulent combination of individuals to give to their statements a credit beyond what they knew to be commonly allowed to those of ordinary vendors, and by them intended to stifle fair and full examination, and, as it were, by bold assertion, coming from four or five influential individuals, and, from their situation, supposed to possess great knowledge of the navigation, to overcome the judgments of the less confident and less intelligent. I say I think it has much the appearance of such premeditated design, but I pass it over, and come to the puffing as a very plain ground of relief. I shall not discuss the question whether puffing as a fraud per se, for it is agreed by all (even by Lord Roslyn, who held some very strange opinions, to say the least of them, as to the inoffensiveness of puffing) that it is allowable to prevent sacrifice only, and not to procure an inflated (45) price; and there is not the least pretense that the object in this case was to prevent sacrifice; but the intent and effect was to give this property a price far beyond its value, and this puffing was of the most fraudulent kind, for I consider not only the employment of Connor as puffing, but all that was said about his being employed to buy for some merchants in Lynchburg; the fraudulent offers made by some of the company, of $1,500 for the lot; for asking him if he would take that sum, and saying that he had refused it, had the same effect (and was so designed) of severally offering it, to which may be adduced a species of puffing calculated to produce the greatest effect, that Galloway had refused $75,000 for his land on the opposite side of the river. Nor can *Page 35 
the defendants protect themselves from the effects of their fraud under the pretense that at the time the lot in question was knocked off to the complainants he was contending with real bidders; for the question was not as to the relative value of the lots, but the value of a lot in the town; having fixed that, by their puffing, the cheated and deluded bidders might well be trusted to settle that matter (the relative value) among themselves, without the aid of by-bidders. The rule laid down by the complainant's counsel is certainly a wise one, that at the sale of a horse and an ox, puffing the sale of the horse is not puffing the sale of the ox, because the bidding for the one does not, in the estimation of the bidders, enhance the value of the other; but this is like the bidding for a yard of cloth — it enhances the price of each yard in the whole piece. The law makes no distinction without a difference. Morehead, therefore, stands in the same situation as if he had been contending with puffers, and the last bid but his own had been made by one of them; for in reality the bidders all became puffers, mere machines in the hands of these men, who, after having set them going, might well retire from the work and enjoy the spoils.
The contract must be set aside, and upon the complainant (46) reconveying, by a conveyance approved by the master and deposited in this office for the benefit of the defendants, a perpetual injunction will issue. The defendants will pay all costs both at law and in equity.
TAYLOR, C. J., concurring.
Decree accordingly.
Cited: Whitaker v. Bond, 63 N.C. 293; Davis v. Keen, 142 N.C. 504. *Page 37